**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JESCICA THROWER, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| ALL AMERICAN HOME CARE, LLC, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Jescica Thrower, through the undersigned counsel, now files this Complaint in Civil Action averring as follows:

## PARTIES

1.      Plaintiff, Jescica Thrower ("Plaintiff"), is an adult individual who resides in Allegheny County, Pennsylvania.

2.      Defendant, All American Home Care, LLC ("Defendant"), is a domestic limited liability company formed in the Commonwealth of Pennsylvania.  Defendant maintains a registered office located at 2921 North 5th Street, Philadelphia, Pennsylvania 19133.

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331.**

3.      This Court has subject matter jurisdiction over this matter ("Federal Question Jurisdiction"), because Plaintiff is advancing causes of action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA"), (the "Federal Law Claims").  28 U.S.C. § 1331.

4.      Plaintiff is also advancing claims under the Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.* (the "MWA") and the Wage Payment and Collection Law, 43 P.S. §260.1, *et seq.*

(the "WPCL") (Plaintiff's claims arising under the WPCL and the MWA are identified as the "State Law Claims").

5. This Court may exercise supplemental jurisdiction over the state law claims because the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims. 28 U.S.C. § 1367(a).

**B.     The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

6. Venue is proper in the United States District Court for the Western District of Pennsylvania (the "Western District") because a substantial part of the events and omissions giving rise to the Federal Law Claims occurred within Allegheny County, Pennsylvania, thus within this judicial district.  28 U.S.C. § 1391(b)(2).

**C.     This Court May Exercise Personal Jurisdiction Over Defendant.**

7. Federal district courts may exercise general personal jurisdiction over corporate defendants in a state where they are "fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

8. A corporate defendant is at home in the states where they are incorporated or maintain their principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

9. A corporation incorporated in Pennsylvania is a domestic business corporation. 15 Pa.C.S. § 102(a).

10. Defendants are "fairly regarded as at home" in Pennsylvania because they are incorporated in it.  *Daimler AG*, 571 U.S. at 137.

## FACTUAL BACKGROUND

11.  On or about February 1, 2025, Defendant hired Plaintiff as a Direct Care Worker and assigned her to a single client, Jane Doe ("Ms. Doe").

12.  Defendant paid Plaintiff $12.25 per hour.

13.  Plaintiff's duties included administering medically related services to Ms. Doe; treating wounds; assisting Ms. Doe through exercises to strengthen her muscular system, administering medications; and various tasks incumbent in Ms. Doe's daily living.

14.  In light of the drastic nature of Ms. Doe's medical conditions, Ms. Doe required medical supervision and care 24 hours per day.

**A.  Defendant Forced Plaintiff to Work Unpaid Shifts Due to Staffing Shortages.**

15.  On or about March 1, 2025, Defendant assigned Plaintiff to a schedule wherein Plaintiff worked in Ms. Doe's home for 16 hours per day seven days per week.

16.  Defendant also assigned Plaintiff as the default "back-up" responsible for covering any shifts related to Ms. Doe's care, where Defendant was unable to assign another staff member.

17.  As delineated more thoroughly below, in light of Defendant's poor scheduling practices and extreme gaps in coverage, this default status resulted in Plaintiff routinely working additional, unpaid, eight-hour shifts in Ms. Doe's home (the "Backup Practice").

18.  Many of these eight-hour shifts occurred after Plaintiff's 16-hour shift concluded, and forced Plaintiff to work for up to 24 hours at a time.

19.  In mid-March 2025, another Direct Care Worker, Clarice Prior ("Ms. Prior") was assigned to care for Ms. Doe.

20.  However, shortly after her assignment, Ms. Prior took 14 days of leave for surgery.

21.  Plaintiff's supervisor, Luciana (last name unknown) ("Luciana"), failed to assign a replacement for nine of Ms. Prior's scheduled eight-hour shifts.

22. Accordingly, Luciana directed Plaintiff, as the default "back-up," to work the nine eight-hour shifts she was unable to staff.

23. Luciana, however, refused to update Defendant's internal timekeeping systems to transfer the hours assigned to Ms. Prior for these shifts to Plaintiff.

24. As such, Defendant did not record or pay Plaintiff the additional 72 hours (nine days x eight hours per shift) that Plaintiff worked.

25. These hours would have been paid at an overtime rate of pay of $18.37 per hour.

26. Throughout the remainder of April 2025, Ms. Prior called off routinely.

27. Luciana again failed to provide replacement staff in these circumstances and directed Plaintiff to perform additional hours, pursuant to the Backup Practice, and to care for Ms. Doe.

28. During this time, Luciana once again failed to assign Ms. Prior's hours to Plaintiff within Defendant's internal systems.

29. From April 2025 through early June 2025, Defendant maintained the Backup Practice and, in light of staffing issues, routinely forced Plaintiff to work her routine 16-hour shifts and the unassigned eight hour shifts that Defendant was unable to staff.

30. During this time, Defendant compensated Plaintiff for only sixteen hours per day and refused to account for the additional eight hours per day Plaintiff worked.

31. In doing so, Plaintiff was deprived of hours that would have been paid at a regular and/or overtime rate of pay.

**B.    Defendant Failed to Train Its Staff to Operate the Hoyer Lift and Forced Plaintiff to Work Additional Unpaid Hours.**

32. Throughout late March 2025 and April 2025, Ms. Prior's lack of experience left her unable to perform certain tasks for Ms. Doe.

4

33. Specifically, Ms. Prior was not trained to operate the "Hoyer" lift needed to move Ms. Doe from her bed.

34. Rather than train its employees, including Ms. Prior and others more thoroughly addressed below, on how to operate the Hoyer lift, Defendant employed a practice where the untrained employee was to call Plaintiff to Ms. Doe's home to operate the lift instead.

35. In doing so, Defendant forced Plaintiff to travel to Ms. Doe's home and perform compensable work.

36. However, Defendant failed to pay Plaintiff for the additional time she spent operating the Hoyer Lift (the "Hoyer Practice").

37. In light of the extensive time Plaintiff worked in any seven-day period, any time Plaintiff worked relating to the Hoyer Practice would have been paid at an overtime rate of pay.

38. In the summer of 2025, Defendant employed Elanna Eberhart ("Ms. Eberhart") to care for Ms. Doe.

39. However, Ms. Eberhart was not trained to operate the Hoyer lift.

40. Correspondingly, Defendant directed Ms. Eberhart to call Plaintiff to Ms. Doe's home to operate the Hoyer lift as needed.

41. As a result, Plaintiff often had to leave her home to assist Ms. Eberhart in operating the Hoyer lift for Ms. Doe.

42. Once again, Plaintiff was not paid operating the Hoyer lift in these instances despite the performance of compensable work.

**C.     Defendant Terminated Plaintiff After She Protested Her Unpaid Wages.**

43. On or around August 2025, after months of overwork, Plaintiff developed serious health issues due to the fact that she was routinely working upwards of 16 hours per day and on many occasions as many as 24 hours per day.

44.     On or around August 2025, Ms. Doe herself called Defendant and reported that Defendant was "*working her* [Plaintiff] *to* death," that Plaintiff was on her feet constantly, and was now limping.

45.     Further, Ms. Doe reported that Plaintiff was forced to work 16 to 24 hours continuously without relief from other staff.

46.     Ms. Doe did not receive a material response to her report and Plaintiff was continued to work in these extreme conditions.

47.     On or about August 21, 2025, Luciana disciplined Plaintiff for an alleged "late" clock-in within its internal timekeeping system.

48.      However, during the period in question, Luciana directed Plaintiff to work within Ms. Doe's home for a 24-hour stretch while covering for another employee's shift.

49.     Once again, Luciana had failed to allocate the shift to Plaintiff within Defendant's internal timekeeping system and Plaintiff was not paid for the additional 8 hour shift she worked.

50.     On the same day, August 21, 2025, Plaintiff challenged the write-up and informed Luciana that Defendant's timekeeping system was not paying her overtime hours accrued through the Backup Practice and the Hoyer Practice.

51.     Further, Plaintiff stated that Defendant's internal system identified her as "late" because of Luciana's failure to allocate the additional shift due to limitations imposed by the Commonwealth of Pennsylvania.

52.     Luciana admitted she did not "*want*" to "*write her* [Plaintiff] *up*" but claimed that "*the state*" would not permit Defendant to have its employees assigned to a 24-hour shift without repercussions to the company.

53. On or about September 8, 2025, Plaintiff went to Defendant's office to collect her paycheck.

54. At this time, Plaintiff met with Luciana, and reported that she was not being paid overtime wages throughout 2025, indicated she would no longer work the extra eight hours per day accrued pursuant to the Backup Practice without pay, reported the chronic lack of support staff for Ms. Doe, and reiterated that she had been working 24-hour shifts because Defendant refused to schedule anyone else to do so.

55. Luciana then assigned Monica Jones ("Ms. Jones") as an additional caregiver for Ms. Doe.

56. However, Defendant still forced Plaintiff to work unpaid hours during Ms. Jones' call offs or unscheduled absences pursuant to the Backup Practice.

57. On or about September 9, 2025, Ms. Doe and Plaintiff contacted the Pennsylvania Department of Aging and Adult Protective Services ("APS") to report that Defendant failed to properly staff Ms. Doe's home; instructing caregivers to leave a bed-bound client alone; and required Plaintiff to work overtime hours without pay.

58. Immediately thereafter, APS conducted an investigation and in a hurried response, Defendant tried to send in new caregivers, including individuals such as "LaShawn" (last name unknown) ("LaShawn") and "Germaine," (last name unknown) ("Germaine") who lacked experience with Hoyer lifts and openly acknowledged that they had never worked a case of Ms. Doe's complexity.

59. One such caregiver injured Ms. Doe after mishandling the Hoyer lift, and the other quickly resigned when they saw how demanding Ms. Doe's case was.

60. Throughout this period, Defendant continued to rely on Plaintiff to operate the Hoyer lift and refused once more to pay her for the extra time she accrued training and supervising other employees pursuant to the Hoyer Practice.

61. On or about September 12, 2025, Plaintiff escalated her concerns to Defendant's corporate headquarters in Philadelphia.

62. Specifically, Plaintiff spoke with "Tanery" (last name unknown") ("Tanery") for forty-nine minutes.

63. During this call, Plaintiff detailed that Defendant (a) forced her to work twenty-four-hour shifts in violation of state regulations and basic safety standards; (b) refused to pay her overtime wages for the extra eight hours per day she was working pursuant to the Backup Practice; (c) failed to staff Ms. Doe's case in a way that complied with its contractual and regulatory obligations; and (d) ignored her health issues and failed to provide her health insurance information.

64. Plaintiff expressly told Tanery that she wanted to be paid for all hours worked, that she believed state and federal wage laws were being violated, and that she considered what was happening to Ms. Doe to be dangerous and unlawful.

65. After Plaintiff's report, Defendant's attitude toward Plaintiff changed markedly.

66. Specifically, Luciana became openly hostile, stopped communicating with her about scheduling, and incredulously began complaining to Plaintiff's coworkers that Plaintiff no longer wanted to "*work for free*."

67. On October 3, 2025, Plaintiff went to Defendant's office with Ms. Jones to collect their paychecks and to deliver incident reports about serious events that had occurred in Ms. Doe's home.

68.    When Plaintiff arrived, Luciana turned her back, walked into an office, closed the door, and then left the room rather than speak with her.

69.    Plaintiff then asked Luciana once again about her unpaid overtime and the lack of coverage for Ms. Doe.

70.    Luciana then, in an act of frustration, refused to respond to Plaintiff's reports and terminated Plaintiff's employment effective immediately.

**COUNT I**
**RETALIATORY TERMINATION**
**IN VIOLATION OF THE FLSA**
**29 U.S.C. § 201, *et seq.***

71.    Plaintiff incorporates the allegations contained in the paragraphs above as if set forth at length.

72.    The FLSA contains an anti-retaliation provision that makes it unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…" 29 U.S.C. § 215(a)(3).

73.    Complaints sufficient to trigger the FLSA's anti-retaliation provisions can be delivered both in written and oral form, provided they are "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

74.    In order to set forth a *prima facie* case for retaliation, a plaintiff must show (1) that defendant was their employer (2) that plaintiff engaged in a protected activity; (3) that her employer took an adverse employment action against her; and (4) causation between her protected activity and the employer's adverse action. *Crisci v. Bridgeville Rest. Grp., LLC*, No. 2:23-CV-

01909-CCW, 2025 U.S. Dist. LEXIS 150990 (W.D. Pa. Aug. 5, 2025) citing *Rhoades v. Young Women's Christian Ass'n*, 423 F. Appx. 193, 198 (3d Cir. 2011).

75.    Defendant was Plaintiff's employer because it controlled the terms of Plaintiff's work, dictated her compensation structure, mandated wage practices, and extended and offer of employment.

76.    Plaintiff was an employee because she was worked for and was accordingly compensated by Defendant.  29 U.S.C. §203(d).

77.    29 U.S.C. § 203 defines when an organization engages in "commerce" sufficient to trigger the FLSA and states:

> "Enterprise engagement in commerce or in the production of goods for commerce" means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1).

78.    Defendant  has engaged in commerce because it purchases necessary materials for business operations from out-of-state vendors for use in their business in Pennsylvania and/or other states; and upon information and belief has an annual dollar income of $500,000.00 given the nature, size, scope, industry, and frequency of services effectuated throughout Pennsylvania.

79.    Plaintiff made several sufficiently clear and detailed reports to Defendant and APS regarding her unpaid wages.  Specifically, Plaintiff made reports on August 21, September 8, September 9, September 12, and October 3, 2025.

80.    Plaintiff's reports qualify as complaints, thus Complainant engaged in activities protected under the FLSA. *Kasten*, 563 U.S. at 14.

10

81.    Defendant terminated Plaintiff on October 3, 2025, an adverse action against Plaintiff.

82.    The close temporal proximity between Plaintiffs protected activities and Defendant's adverse action sustain an inference that Plaintiff's protected activities were causally connected to her termination.

83.    In addition to an award of unpaid wages an employee may be awarded liquidated damages, and reasonable attorney's fees and costs.  29 U.S.C. § 216(b).

84.    An employer can only rebut an award of liquidated damages by showing they had "good faith and reasonable grounds" for their conduct.  *Martin*, 949 F.2d at 1299.

85.    Defendant cannot establish "good faith and reasonable grounds" because they willfully and flagrantly disregarded their obligations as an employer.

86.    Reasonable attorney's fees, costs, and expenses are mandatory "in addition to any judgment awarded to" Plaintiff.  29 U.S.C.S. § 216(b).

87.    Plaintiff is therefore entitled to an award of liquidated damages and attorney's fees. 29 U.S.C. § 216(b)

88.    Defendant's retaliation was intentional, willful, and taken with reckless indifference to Plaintiff's federally protected rights.

89.    As a direct and proximate result of Defendant's conduct Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

11

90.     WHEREFORE, Plaintiff, Jescica Thrower, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGE**
**IN VIOLATION OF THE FLSA**
**29 U.S.C. § 201, *et seq.***

91.     Plaintiff incorporates the allegations contained in the paragraphs above as if set forth at length.

92.     The FLSA mandates two minimum rates of pay for time employees spend dedicated to workplace operations for covered employers who constitute an enterprise engaged in commerce. 29 U.S.C. §§ 206, 207.

93.     Specifically:

(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.
(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, **for a workweek longer than forty hours** unless such employees receives compensation for his employment in excess of the hours above specified at a rate **not less than one and one-half times the regular rate at which he is employed**.

*Id*. at § 207(a)(1) (emphasis added).

94.     As addressed above, Defendant and Plaintiff maintained an employer-employee relationship.  *Id*. at § 203.

95.     As addressed above, Defendant sufficiently "engaged in commerce." *Id*. at § 206.

96.     As described above, Plaintiff routinely worked the Backup Practice and worked the Hoyer Practice in addition to her sixteen regularly scheduled hours.

97.     Defendant did not pay Plaintiff for either the Backup Practice or the Hoyer Practice.

98.     Defendant thereby denied Plaintiff the overtime rate of pay she was entitled to. *Id.* at § 207.

99.     As averred above, when an employer violates 29 U.S.C. § 207, an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorneys' fees. *Id*. at § 216(b).

100.     Defendant's willful and knowing actions were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required pay, and Plaintiff's damage.

101.     Defendant cannot establish "good faith and reasonable grounds" for their violation of Plaintiff's rights, as demonstrated by Defendant's intentional and willful animus in flagrantly disregarding their responsibilities and obligations as an employer.

102.     Therefore, Defendant is liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses. *Id*.

103.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic losses.

104.     WHEREFORE, Plaintiff, Jescica Thrower, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT III
### FAILURE TO PAY OVERTIME WAGE
### IN VIOLATION OF THE MWA
### 43 P.S. § 333.101, *et seq.*

105.     Plaintiff incorporates the allegations contained in the paragraphs above as if set forth at length.

106.     The MWA, much like its federal law counterpart in the FLSA, mandates a minimum rate of pay for any hour worked.  43 P.S. § 333.104.

13

107.    Specifically, "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary…." *Id*. at § 333.104(c).

108.    The MWA requires the same analysis as the FLSA for whether Defendant was an "employer". *See Schneider v. IT Factor Prods.*, CIVIL ACTION NO. 13-5970, 2013 U.S. Dist. LEXIS 173583, at *13 (E.D. Pa. Dec. 10, 2013) (citing *Scholly v. JMK Plastering, Inc.*, No. CIVIL ACTION NO. 07-cv-4998, 2008 U.S. Dist. LEXIS 49958, at *6-7 (E.D. Pa. June 25, 2008)).

109.    As averred above Defendant is an employer under the FLSA, thus Defendant is also an employer under the MWA.

110.    Plaintiff was Defendant's employee because she was suffered and permitted to work by Defendant. 43 P.S. § 333.103(f).

111.    As averred above Plaintiff routinely worked in excess of 40 hours each week and was not compensated accordingly to the minimum overtime rate of pay.

112.    The MWA provides for the recovery of attorneys' fees and costs when an employer fails to pay an employee in accordance with 43 P.S. § 333.104(c). *Id*. at § 333.1133.

113.    At all times relevant herein, Defendant's actions were knowing, intentional, and willful in its violation of Plaintiff's rights.

114.    Defendant is liable to Plaintiff for actual damages (lost wages), as well as reasonable attorneys' fees, costs, and expenses. *Id*.

115.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic losses.

WHEREFORE, Plaintiff, Jessica Thrower, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

14

**COUNT IV**
**VIOLATION OF THE WPCL**
**43 P.S. § 260.1, *et seq*.**

116.   Plaintiff incorporates the allegations contained in the paragraphs above as if set forth at length.

117.   The WPCL provides employees with a statutory remedy to recover wages and other benefits contractually due to them from their employer.   *Oberneder v. Link Comput. Corp*., 696 A.2d 148, 150 (Pa. 1997) and *Weldon v. Kraft, Inc*., 896 F.2d 793, 801 (3d Cir. 1990).

118.   To prevail on a WPCL claim, a plaintiff must establish (1) the entity that withheld wages from the plaintiff is an "employer" under the WPCL; (2) the plaintiff is contractually owed the withheld wages; and (3) the employer withheld the contractually owed wages.   *Minehan v. McDowell*, No. 21-05314, 2023 U.S. Dist. LEXIS 147872 (E.D. Pa. Aug. 22, 2023) citing *Hirsch v. EPL Techs., Inc*., 2006 PA Super 293, 910 A.2d 84, 88 (Pa. Super. 2006).

119.   The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."  43 P.S. § 260.2a.

120.   Defendant was an employer because it employed Plaintiff to work and in exchange compensated her for that work.

121.   From March 1, 2025 to October 3, 2025, Plaintiff accrued compensable hours pursuant to the Backup Practice and the Hoyer practice.

122.   Defendant did not and has not compensated Plaintiff for the hours earned through the Backup Practice and the Hoyer Practice.

123.   An employee may recover liquidated damages when wages remain unpaid thirty days beyond their regularly scheduled payday.  43 P.S. § 260.10.

124.    Plaintiff's compensable hours have remained outstanding for more than thirty days beyond Defendant's regularly scheduled payroll.

125.    Defendant has not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

126.    Consequently, Plaintiff is entitled to an award of liquidated damages. *Id*.

127.    In addition, where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the Defendants.

*Id*. at § 260.9a(f).

128.    Therefore, Plaintiff is entitled to reasonable attorneys' fees that were incurred as a result of prosecuting Defendant's conduct described hereinabove.  *Id*.

129.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered tangible economic losses resulting from the deprivation of lawfully owed wages.

130.    WHEREFORE, Plaintiff, Jescica Thrower, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## JURY DEMAND

131.    Plaintiff demands a trial by jury on all matters so triable.

## *AD DAMNUM* CLAUSE

132.    For the above stated reasons, Plaintiff, Jescica Thrower, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant, All American Home Care, LLC, and prays for relief as follows:

16

a.  Declare and find that Defendant committed one or more of the following acts:

    i.  Violated the FLSA in terminating Plaintiff in retaliation for her protected activities;

    ii.  Violated the FLSA in failing to pay Plaintiff an overtime rate of pay;

    iii.  Violated the MWA in failing to pay Plaintiff an overtime rate of pay;

    iv.  Violated the WPCL in failing to pay Plaintiff a regular rate of pay;

b.  Award unpaid wages and other compensation denied to Plaintiff to date by reason of Defendant's unlawful acts;

c.  Award actual damages in an amount to be determined at trial;

d.  Award liquidated damages as provided by the FLSA and the WPCL;

e.  Award compensatory and punitive damages;

f.  Award equitable relief in the form of back pay and front pay;

g.  Award reasonable attorney's fees and costs of suit; and

h.  Award pre-judgment and post-judgment interest where accorded by law; and

i.  Award such other and further relief as this Court deems just, equitable, and proper.

Date: July 28, 2026

Respectfully submitted,

**STEENLAND LAW, PLLC**

By: _/s/ Kyle H. Steenland_
    Kyle H. Steenland (Pa Bar No. 327786)

    Steenland Law, PLLC
    1575 McFarland Road, Suite 212
    Pittsburgh, PA 15216
    Phone: 412.368.2324
    Fax: 412.214.9182
    E-mail: kyle@steenlandlaw.com

    _Counsel for Plaintiff,_
    _Jescica Thrower_

## **VERIFICATION**

I, Jescica Thrower, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.


Dated: _____

ID kui2XHTxRgWK8A4pv9asr4wo

Jescica Thrower